IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARTA L. RIVERA                                                                      PLAINTIFF

V.                              CASE NO. 3:14-CV-03060

BOSTON MOUNTAIN RURAL
HEALTH CENTER, INC.                                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is Defendant Boston Mountain Rural Health Center, Inc.'s ("Boston Mountain") Motion for Summary Judgment (Doc. 16) and supporting documents. Plaintiff Marta L. Rivera filed a Response in Opposition (Doc. 22), and thereafter, Boston Mountain filed a Reply (Doc. 23). For the reasons explained herein, the Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

Rivera, a female of Guatemalan national origin, was hired on an at-will basis on or around January 5, 2010, to serve as a lab technician at Boston Mountain's Green Forest, Arkansas clinic. While at Green Forest, Rivera worked in the lab the majority of the time, but also translated for patients, checked patients into the clinic, answered phones as needed, and helped out in other departments. She worked eight hours per day.

Because the Green Forest clinic needed to hire a licensed nurse to perform certain duties, Boston Mountain determined that Rivera's lab technician position must be eliminated. Rather than fire Rivera, her supervisors offered her a transfer to the Huntsville, Arkansas clinic as a clinical assistant/interpreter. The Huntsville clinic is approximately 35-40 miles away from the Green Forest clinic. Rivera accepted the new position. She did

not receive reimbursement for the added gas and mileage she incurred due to the new commute to Huntsville, but she did receive an hourly pay increase. She performed fewer lab duties at Green Forest and instead spent more time at the front desk and interpreting/translating. She eventually resigned her position voluntarily in favor of accepting a job closer to her home.

This lawsuit alleges discrimination and retaliation on the basis of sex and national origin pursuant to Title VII of the Civil Rights Act of 1964. Specifically, Rivera avers that Boston Mountain allowed her co-worker at the Green Forest clinic, a radiologic technologist named Bobby Hill, to engage in comments and behavior that discriminated against her. According to Rivera, Boston Mountain transferred her to its Huntsville location in retaliation for Rivera reporting the discrimination.

Rivera eventually brought her discrimination and retaliation claims before the Equal Employment Opportunity Commission, and, after exhausting her administrative remedies, filed suit in this Court on June 2, 2014.

## II. LEGAL STANDARD

When a motion for summary judgment is filed, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When no direct evidence of discrimination exists, Title VII claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 656 (8th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973-974 (8th Cir. 2012).

Under the burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination and/or retaliation. *Guimaraes*, 674 F.3d at 973. If the plaintiff makes her prima facie case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the actions. *Id.* If the defendant meets this burden, it is up to the plaintiff to produce evidence that the defendant's "proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011)).

## III. DISCUSSION

In order for Rivera to state a prima facie case of discrimination, she must establish the following elements: (1) that she is a member of a protected class; (2) that she was qualified for her job; (3) that she suffered an adverse employment action; and (4) that these circumstances as a whole give rise to an inference of discrimination. *Guimaraes*, 674 F.3d at 973-74. The prima facie case for retaliation is similar in that Rivera must present evidence: (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006).

In considering Rivera's prima facie case for both her claims, it appears she is clearly a member of two protected classes due to the fact that she is female and of Guatemalan origin. Her employer also concedes she was qualified to do her job at both the Green Forest clinic and the Huntsville clinic. Nevertheless, Rivera's prima facie case stalls in its

tracks at the next step in the inquiry: establishing the existence of an adverse employment action. This Rivera cannot do.

The Eighth Circuit has held that an adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 671 (8th Cir. 2006) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)). Such a disadvantage might include "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (internal quotation marks and citations omitted). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Id.* (internal quotation marks and citation omitted). Not every employment action, even if viewed by the employee as negative, will rise to the level of an adverse action pursuant to Title VII. Instead, an employee must suffer "some personal loss or harm with respect to a term, condition, or privilege of employment." *Hoffman v. Rubin*, 193 F.3d 959, 964 (8th Cir. 1999).

Turning to the facts in the case at bar, Rivera does not contend that she was fired or demoted, or that she received a decrease in pay as a result of complaining of discrimination. Instead, she argues she suffered an adverse employment action as a result of her transfer from the Green Forest clinic to a sister clinic in Huntsville approximately 35-40 miles away—despite the fact that she received the same benefits, worked the same number of hours, and was paid at a higher rate. Rivera claims she suffered a material employment disadvantage as a result of the increased costs she incurred in commuting

to the new clinic, and she asserts that her job duties materially changed following the transfer. Lastly, Rivera argues that her new commute to and from Huntsville prevented her from continuing to engage in part-time employment cleaning the Green Forest clinic after hours.

Addressing Rivera's arguments in turn, the Court observes that "[a] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997); *see also Jones v. Reliant Energy-ARKLA*, 336 F.3d 689, 691 (8th Cir. 2003) (citing *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000), which held that an employee's transfer to another facility, when such transfer did not require her to change residence, was merely an inconvenience and not an adverse employment action; and *Hoffman v. Rubin*, 193 F.3d 959, 964 (8th Cir.1999), which held that requiring an employee to move from Chicago, Illinois, to St. Paul, Minnesota, was not an adverse employment action when the employee's rank, pay, and other benefits were unchanged). Here, Rivera admitted during her deposition that after her transfer to the Huntsville clinic, she received a pay *increase* and no reduction in her benefits. She was not required to change residences due to the transfer, and her work schedule remained the same.

Next, Rivera alleges that her job duties at the Green Forest clinic were materially different from her job duties at the Huntsville clinic after she was transferred. It appears her primary complaint is that she worked in the lab most of the time at Green Forest, but she spent most of her time working at the front desk at Huntsville, answering calls, checking in patients, and translating or interpreting from Spanish to English and English

5

to Spanish. In her Response to the Motion for Summary Judgment, Rivera claims she was not trained to perform these "new" administrative duties at the front desk at the Huntsville clinic. However, a close examination of Rivera's deposition reveals that she received training at the Green Forest clinic on how to work the front desk and check patients into the facility. *See* Doc. 17-1, p. 6. Such administrative tasks were not, therefore, completely unknown to her. Rivera also performed translation/interpretation services at both clinics. *Id.* at p. 5. Finally, although her work at Green Forest involved spending most of her time in the lab, she admitted during her deposition that at Huntsville, she "worked in the lab sometimes" and "worked with the doctors . . . because they're shorthanded, [and] the nurses . . . ." *Id.* at p. 37; *see also* Doc. 21-1, p. 2 ("By the time I left Huntsville[,] I did have some lab duties, but I was still up at the front desk the majority of the time."). All these admissions by Rivera show that, while she may have spent more time doing certain duties at the Huntsville clinic as compared to the Green Forest clinic, the duties she performed at both clinics were essentially the same. No facts indicate that Rivera suffered an adverse employment action due to a change in job duties after her transfer.

Lastly, as to Rivera's complaint that her transfer to Huntsville meant she had to give up her part-time, after-hours work cleaning the Green Forest clinic, this fact alone cannot constitute an adverse employment action. Rivera claims to have lost approximately $500 per month in extra income after she found it impossible to both commute to and from the Huntsville clinic and clean the Green Forest clinic after hours. However, the fact remains that the cleaning job was never part of Rivera's paid duties as either a lab technician at Green Forest or an interpreter/translator at Huntsville. *Id.* at p. 44. Her deposition reveals that she began cleaning the clinic not at the behest of Boston Mountain, but after a co-

worker approached her and asked whether she would be interested in helping the co-worker clean for extra money. *Id.* Moreover, Rivera's decision to stop cleaning the clinic was her own, as her supervisor at Huntsville gave her explicit permission to continue with the cleaning job if she wished. *Id.* at p. 45. Given these circumstances, Rivera's loss of the added income she received through her part-time cleaning work cannot constitute an adverse employment action under Title VII.

## IV. CONCLUSION

As Rivera has failed to set forth facts to show that she suffered an adverse employment action, her prima facie case as to both employment discrimination and retaliation must fail, and Defendant Boston Mountain Rural Health Center, Inc.'s Motion for Summary Judgment (Doc. 16) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE** with final judgment to be entered contemporaneously herewith.

**IT IS SO ORDERED** this 30th day of July, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

7